IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CR-23-FL-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| BRUCE ALAN SMITH, JR., ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for review of the magistrate judge's oral pretrial detention order entered February 9, 2015, with written order filed February 10, 2015 (DE 29). Requested review having been undertaken, for reasons given below, defendant's plea for release is denied.

## BACKGROUND

Defendant is charged in an indictment returned January 20, 2015, with a single count of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B); and 846 (DE 1). The Pretrial Services Report recommended defendant's release on a Personal Recognizance Bond, under custody of his girlfriend, Jessica Prince ("Prince"). (DE 24).

Defendant appeared before the Hon. James E. Gates, United States Magistrate Judge, for detention hearing on February 9, 2015. Following the hearing, the magistrate judge entered an order of detention pending trial. (DE 29). Defendant requests that the district court reverse the decision of the magistrate judge.

**COURT'S DISCUSSION**

If a person is ordered detained by a magistrate judge, the person may file with the district court a motion for revocation of the order. 18 U.S.C. § 3145(b). The district court should conduct a *de novo* review of the decision by the magistrate judge. United States v. Clark, 865 F.2d 1433, 1437 (4th Cir. 1989); United States v. Williams, 753 F.2d 329, 333 (4th Cir. 1985); United States v. Ramey, 602 F. Supp. 821, 822-24 (E.D.N.C. 1985).

In doing so, the court makes an independent determination as to whether the magistrate judge's findings are correct based on the court's review of the evidence before the magistrate judge. See Williams, 753 F.2d at 333-34. The court may conduct a further evidentiary hearing if it is necessary or desirable in carrying out the review. See id., at 333; see also United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990) (district court has discretion on whether to conduct a further evidentiary hearing); United States v. Delker, 757 F.2d 1390, 1393-94 (3rd Cir. 1985); United States v. Fortna, 769 F.2d 243, 249-50 (5th Cir. 1985) (same). Having completed a thorough review of Judge Gates's detention order, as well as the report prepared by the United States Pretrial Services Office, and the defendant's motion, and having listened to a complete recording of the detention hearing, the undersigned finds that no further evidentiary hearing is necessary.

Pre-trial detention must be ordered when, after hearing, a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e)(1). In a pretrial detention hearing, the government's burden is to establish by clear and convincing evidence that no conditions of release will reasonably assure the safety of the community. 18 U.S.C. §

2

3142(f) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."); United States v. Salerno, 481 U.S. 739, 751 (1987) (requiring "clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or community" to justify pretrial detention.). To consider whether any conditions of release will reasonably assure a defendant's attendance at trial, the government need only prove that there are no such conditions by a "preponderance of the evidence." United States v. Stewart, 19 F. App'x 46, 47 (4th Cir. 2001) (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)).

Because there is probable cause to believe that defendant committed an offense subject to a maximum term of imprisonment of 10 years or more under 21 U.S.C. § 801 *et seq.*, defendant is subject by operation of law to the presumption, which may be rebutted by the defendant, that he is a risk of flight and a danger to the community, and that no condition or combination of conditions can be fashioned to assure his appearance and that he will not be a danger. 18 U.S.C. § 3142(e)(3). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the court must take into account the available information concerning –

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including –
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release . . . .

3

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. 18 U.S.C. § 3142(f).

At the detention hearing, defendant offered the testimony of his girlfriend, Prince. Prince testified that she has lived with defendant for four years. Prince's testimony, in conjunction with the Pretrial Services Report, shows that the couple care for 3 children: M.S. (age 1), born of the relationship between Smith and Prince; A.S. (age approximately 9), Smith's daughter from a previous relationship, who stays with the couple 3 nights a week; and N.M. (age 7), Prince's son from a previous relationship.[1] Prince works 5 days a week, for approximately 20-30 hours.

Prince testified that defendant farms seasonally, and operates a rental business over eleven properties. Defendant assists in childcare while she works. According to Prince, defendant's detention would impose a hardship on her ability to care for her children. Prince also testified that defendant cares for his father, who suffered 2 strokes in 2014. Prince stated that she understood what her responsibilities would be as a third-party custodian and was willing to perform them, including her obligation to report defendant to authorities if he violated the conditions of his release.

On cross-examination, the government elicited from Prince that agents executed a search warrant on the residence she shared with defendant in September 11, 2014, where the agents located firearms and money. Prince testified that, during the search, she had told agents that she "had some problems" with defendant. When questioned by government counsel, Prince denied recalling that she had told agents that she knew that defendant was "selling something." Prince testified that

---

[1] Initials only are provided consistent with Fed. R. Crim. P. 49.1. The Pretrial Services Report documents A.S. age as 9 years old, but Prince testified that A.S. does not turn 9 until May 2015.

4

defendant's sister also lived in Tarboro and could care for Smith's father, but that Smith's sister "works a lot." On re-direct, Prince testified that agents did not find any narcotics when they searched her residence on September 11.

Following Prince's testimony, the government called Agent Everette Butler of the Rocky Mount Police Department and the Raleigh Resident Office of the Drug Enforcement Agency. Agent Butler testified that he began investigating activities involving defendant in mid-2014, after receiving information from cooperating sources about Armando Farias ("Farias") and his son, Armando Farias-Valdovinos ("Farias-Valdovinos").[2] Agent Butler further testified that agents directed the cooperating sources to meet with Farias and Farias-Valdovinos in August 2014 and September 4, 2014, in order to discuss a transaction to purchase multiple kilograms of cocaine. At these meetings, Farias advised the cooperating sources that a third person would provide the money for the purchase. The cooperating sources arranged for the sale of 2 kilograms of cocaine to Farias and Farias-Valdovinos, for $34,000 per kilogram. The sale would take place at a trailer on September 11, 2014.

Agent Butler testified that his team conducted surveillance of the target location for the transaction on September 11, 2014. He testified that agents observed Farias and Farias-Valdovinos pull up to the trailer, that Farias-Valdovinos entered, and that Farias then drove away. Shortly after Farias left, agents observed a truck drive up to the trailer and a white male, later identified as defendant, enter. A few minutes after, Farias called the cooperating sources and reported that the individual with the money had arrived at the trailer. The cooperating sources then entered the trailer.

---

[2] Armando Farias and Armando Farias-Valdovinos are alleged co-defendants in the conspiracy, also named in the indictment issued January 20, 2015, and currently pending trial in this court under Docket Nos. 5:15-CR-23-FL-1 and 5:15-CR-23-FL-2, respectively.

5

According to later reports by the cooperating sources, Farias-Valdovinos showed them $68,000 stored in a lunch box and an additional $4,000 in a kitchen drawer. Farias-Valdovinos told the cooperating sources that the individual who had provided the money was in another room, but would not be meeting with the cooperating sources. The cooperating sources then left the trailer.

After the cooperating sources left, Agent Butler testified that agents executed a search warrant at the trailer, where they found Farias-Valdovinos and defendant inside, along with the money in the kitchen drawer and the lunch box. The lunch box bore the name of Nicholas McDonald. Defendant was arrested and agreed to speak with agents. Agent Butler testified that, under questioning, defendant ultimately admitted that he had brought the lunch box and money. Defendant stated that he had obtained the money from a bank and his home. Agents then traveled to defendant's house and questioned Prince, who wrote a statement that she had heard defendant had been "selling something" but did not ask defendant about it. Agent Butler testified that he and others had interviewed "numerous people" after September 11, 2014, and learned that defendant was a source of drugs in the community.

On cross-examination, Agent Butler admitted that he was not at the trailer during the transaction on September 11, 2014. He admitted that he did not see defendant enter the trailer or see defendant's arrest. Agent Butler testified that the trailer was located in Rocky Mount, 25 miles away from defendant's home in Tarboro. He acknowledged that the search warrant of defendant's home did not locate any drugs. Agent Butler also testified that defendant was originally charged in state court for the offense at issue in this case, and that Agent Butler was unaware that defendant ever missed any court dates associated with the state court case or ever tried to leave the area during the pendency of his prosecution.

On re-direct, Agent Butler testified that he has learned that defendant had made the statement that "if he found out people were talking on him, there was going to be repercussions [sic]." On re-cross, Agent Butler admitted that he had received this information from just a single source. Under the magistrate judge's further inquiry, Agent Butler further admitted that he had not had opportunity to inquire into the reliability of that source.

In closing argument, the government emphasized the timing of Farias's phone call to the cooperating source, just shortly following defendant's entrance into the trailer on September 11. The government further promoted that the lunch box which carried the money bore the name of Nicholas McDonald. Finally, the government noted that Agent Butler had testified to other individuals confirming that defendant was a source of drugs in the community. Defendant, in turn, asserted that "holes" in the case were presented by the fact that Agent Butler had not personally witnessed defendant enter the home, and that no drugs were found at defendant's home, contrary to what might be expected from a large-scale drug dealer. Defendant also pointed to the recommendation of the Pretrial Services Report as support. Furthermore, defendant noted his employment history; his lack of history of drug or alcohol abuse, or any significant criminal convictions; defendant's family ties to the area; defendant's attendance at previous proceedings in his state court case; the absence of evidence that defendant had attempted to flee; and the hardships that detention would impose on defendant's family.

After hearing argument from defense counsel and the government, the magistrate judge, while commenting favorably on the case made by defendant, determined that no condition or combination of conditions could reasonably assure the safety of the community. The magistrate judge noted that, while defendant had rebutted the presumption of detention pursuant to § 3142(e),

7

that presumption remained a factor in his decision. The magistrate judge further found the weight of the evidence against defendant was strong. With respect to the nature and circumstances of the offense, the magistrate judge noted the large amount of cocaine and money involved. The magistrate judge also took note of the presence of firearms at defendant's home, and the common link between firearms and drugs, although the magistrate judge stated that he did not give this consideration "much weight." The magistrate judge gave "some weight" to Agent Butler's testimony that other sources had also reported defendant to be drug supplier.

The magistrate judge found the proposed custodial relationship under Prince to be unacceptable, given that Prince had submitted a written statement to agents admitting her previous suspicions of defendant's activities, and her failure to act on those suspicions prior to September 11. The magistrate judge also found Prince's failure to acknowledge making that written statement when cross-examined by the government. The magistrate judge noted the presence of minor children and Prince's absence from the home for significant periods of time due to work as additional factors weighing against defendant's release.

The magistrate judge credited defendant's lack of a significant criminal record. He also noted that the offense conduct took place in a different community than defendant's home. He remarked favorably on defendant's services for his children and father. Ultimately, however, these considerations did not outweigh the reasons supporting detention, and detention was ordered. Defendant's appeal does not include additional argument, but recites the course of the detention proceeding.

Having reviewed all the evidence before the magistrate judge and considered the thoughtful arguments of counsel made at the hearing, the court finds the well-considered decision of the

8

magistrate judge to be correct. The government has proven by clear and convincing evidence that no conditions of defendant's release reasonably can assure the safety of the community.

In support of this conclusion, the court adopts the reasoning of the magistrate judge and makes the following findings in supplement to or in emphasis of the magistrate judge's findings. The court recognizes the positive aspects of defendant's background, namely defendant's employment history, care for his children and father, and minimal criminal history. Nevertheless, these facts are outweighed by the other evidence presented. In particular, the sheer amount of drugs and money involved in the September 11, 2014, transaction, along with statements that Agent Butler obtained from members of the community, tend to show defendant's deep involvement in the drug trade. It is likely that defendant will not be able to make a clean break from these activities if released. The court also agrees that the weight of the evidence against defendant is strong, particularly defendant's presence in the trailer at the time of the transaction, the presence of defendant's son's name on the lunch box that carried the money to be used for the drug purchase, and defendant's admission to authorities that he had brought the lunch box and money to the trailer. Defendant's use of a lunch box bearing the full name of N.M. in a large-scale drug transaction also speaks to a lack of vigilance in protecting his family, especially troubling given the particularly young ages of the children in his household. Finally, the court agrees with the magistrate judge that the proposed custodial arrangement would not be acceptable, given Prince's lack of credibility and prior unwillingness to confront defendant about his criminal activities.

In conclusion, considering all the circumstances of this case, no condition or combination of conditions will reasonably assure the safety of the community as required. Therefore, the decision of the magistrate judge is correct, and detention prior to trial is necessary.

9

## CONCLUSION

For the reasons given, defendant's motion for release (DE 31) is DENIED. Defendant shall remain committed to the custody of the Attorney General, subject to the provision that defendant shall be confined in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that he shall be afforded reasonable opportunity for private consultation with his counsel; and, that on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility where defendant is confined shall deliver defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED, this the 2nd day of March, 2015.

*/s/ Louise W. Flanagan*

LOUISE W. FLANAGAN
United States District Judge

10

Case 5:15-cr-00023-FL   Document 42   Filed 03/02/15   Page 10 of 10